UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

James Moran,

                Plaintiff,

      v.                                 **DECISION AND ORDER**
                                        **05-CV-00434**

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## Introduction

1.      Plaintiff James Moran challenges an Administrative Law Judge's

("ALJ") determination that he is neither entitled to disability insurance benefits

("DIB") nor eligible for Supplemental Security Income ("SSI") under the Social

Security Act ("the Act") prior to March 12, 1991, his onset of disability date.

Plaintiff alleges he has been disabled since September 1, 1980, because of

anxiety, depression, alcoholism, gastric problems, Peyronies Disease

hydrocele, and arthritis.   Plaintiff met the disability insured status

requirements of the Act for purposes of entitlement to DIB and SSI on March

12, 1991.

## Procedural History

2.      Plaintiff filed concurrent applications for DIB and SSI on September

12, 1980, and on April 6, 1987, and an application for SSI on August 15,

1986.  The application of September 12, 1980 was denied.  No information is

contained in the record to indicate if the application was reconsidered.  The

application of August 15, 1986 was denied and Plaintiff made no request for

reconsideration.  The applications of April 6, 1987 were denied initially and on reconsideration.  Plaintiff requested a hearing on the denial of the April, 1987 applications and the hearing took place before ALJ J. Lawson Brown on February 11, 1988.  Plaintiff was notified of the denial of his claims on March 17, 1988.  Plaintiff thereafter filed concurrent applications for DIB and SSI on March 22, 1991.  The applications from March 22, 1991 were denied initially and on reconsideration.  Plaintiff requested a hearing on the denial and the hearing took place in front of ALJ Hastings Morse on August 6, 1992.  Plaintiff was notified of the denial of his claim on September 2, 1992.  Plaintiff requested review of the decision by the Appeals Council and the Appeals Council remanded the case on June 4, 1993, for a Supplemental Hearing and new decision.  Plaintiff was subsequently found to be disabled as of March 12, 1991.

On March 12, 1993, Plaintiff requested review of his 1986 SSI claim and of his 1987 DIB and SSI claims as a member of the Stieberger class action.[1]  See Stieberger v. Sullivan, 792 F. Supp. 1376, as modified, 801 F. Supp. 1079 (S.D.N.Y. 1992).  On August 22, 1995, Plaintiff requested review of his 1980 DIB and SSI claims as a member of the Dixon class action.[2]  See

---

[1] Stieberger held that a class member would have the opportunity to have his/her DIB claim reopened if claimant resided in New York State when claimant's disability was denied or terminated for medical reasons at any level of administrative review from October 1, 1981, through October 17, 1985, or at the ALJ or Appeals Council level from October 18, 1985, through July 2, 1992.  See Social Security Administration Program Operations Manual (POMS), POMS Section DI 12586.001.
[2] Dixon held that a class member would have the opportunity to have his/her SSI and/or DIB claim reopened at the reconsideration level if the claimant resided in New York when claimant's SSI and/or DIB claim was denied or terminated by either the New York Office of Disability Determinations (ODD) or SSA between July 1, 1976 and July 19, 1983, and the denial or termination of the claim was based on a finding that claimant did not have a severe impairment, or claimant's impairment was only slight.  See Social Security Administration Program Operations Manual (POMS), POMS Section DI 32521.001.

Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995).  The Commissioner determined Plaintiff was a member of the Dixon class based on his 1980 claims, and was a member of the Stieberger class based on his 1987 claims. Further, the Commissioner found Plaintiff was not a member of the Stieberger class based on his 1986 claim, as that claim was initially denied in 1986 and pre-dated the time frame to qualify for review under Stieberger.  Upon reconsideration of Plaintiff's claims that did qualify for review, the Commissioner found Plaintiff not disabled.

Plaintiff requested a hearing before an ALJ on June 6, 2001.  The hearing took place before ALJ Robert Wright on December 5, 2002.  The ALJ considered Plaintiff's claim de novo, and on January 14, 2003, found Plaintiff was not disabled prior to his established onset of disability date of March 12, 1991.  Plaintiff requested review of the ALJ's decision by the Appeals Council. On March 29, 2005, the Appeals Council denied Plaintiff's request for review.[3]

3.      On April 7, 2005, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Social Security Act ("SSA"), modify the decision of Defendant, and grant DIB and SSI benefits to Plaintiff pursuant to his applications dated September 12, 1980 and April 16, 1987.  Defendant filed an answer to Plaintiff's complaint on July 25, 2005, requesting that the Court dismiss Plaintiff's complaint.  Plaintiff submitted Plaintiff's Social Security Appeal Brief and Plaintiff's Statement of the Appeal

---

[3] The ALJ's January 14, 2003 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

on August 9, 2005.  In his brief, Plaintiff pointed out that a substantial portion of the medical and other evidence relevant to his case was missing from the administrative record provided by the Commissioner.  The missing portion of the record was subsequently located and this Court granted Plaintiff a 30 day extension to file a supplemental appeal brief.  Plaintiff's Supplemental Social Security Appeal Brief and Plaintiff's Supplemental Statement of the Appeal were filed on November 28, 2005.   On January 18, 2006, Defendant filed a Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[4]  After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

## Discussion

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant

---

[4] Although Defendant has characterized her Memorandum of Law as a "Motion for Judgment on the Pleadings," (Docket No. 17), neither the Defendant nor the Plaintiff appear to have filed such a motion and there is no evidence in the Docket of any such motions having been filed.  Nevertheless, the Court will "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without the remanding the cause for a rehearing." 43 U.S.C. 405(G).

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.       "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.       The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen

v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119

(1987), and it remains the proper approach for analyzing whether a claimant

is disabled.

> 7.      This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently
> engaged substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work active-
> ties.  If the claimant has such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant has
> such an impairment, the [Commissioner] will consider him disabled with-
> out considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial gain-
> ful activity.  Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe impairment,
> he has the residual functional capacity to perform his past work.  Finally,
> if the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

> 8.      While the claimant has the burden of proof as to the first four steps,

the Commissioner has the burden of proof on the fifth and final step.  See

Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).

The final step of this inquiry is, in turn, divided into two parts.  First, the

Commissioner must assess the claimant's job qualifications by considering

his physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42

U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); <u>Heckler v. Campbell</u>, 461
U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the
five-step process set forth above: (1) Plaintiff engaged in substantial gainful
activity in the years 1985 and 1989, and therefore, the presumption of non-
disability provided in the <u>Dixon</u> agreement applies with respect to his DIB and
SSI applications filed on September 12, 1980 (R. at 20);[5] Plaintiff had
engaged in substantial gainful activity in 1985 and 1989 and was not
disabled; however, Plaintiff did not engage in substantial gainful activity in
other years after November 1, 1986, the potential administrative onset date
identified pursuant to the <u>Stieberger</u> settlement (R. at 20); (2) Plaintiff has
severe impairments which do not meet the criteria necessary for finding a
disabling impairment under the regulations (R. at 20); (3) Plaintiff's
impairments prevented him from performing his past relevant work as an
apple picker (R. at 20); (4) Prior to March 12, 1991, Plaintiff retained the
residual functional capacity to perform light work that is not complex, and
such work exists in significant numbers in the national economy (R. at 20);
and, (5) the ALJ certified there was sufficient evidence to support the findings
regarding Plaintiff's residual functional capacity at step five and that evidence
can be found in Exhibits 18, 19, AC-1, and B-34 of the record (R. at 20).
Plaintiff was 47 years old on the potential administrative onset date, attained
age 50 in 1989, has a tenth grade education, and has unskilled work
experience (R. at 20). Rules 202.17 and 202.10 of Appendix 2, Subpart P of

---

[5] Citations to the underlying administrative are designated as "R."

the Social Security Regulations No. 4 provide the framework that requires a finding of "not disabled" prior to March 12, 1991 (R. at 20).  Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at the time of his applications filed on September 12, 1980 and April 6, 1987 (R. at 21).

**Dixon Class Denial**

10.     The issue to be determined by this Court is whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled for purposes of entitlement to DIB from September 1, 1980, his alleged onset of disability date, to March 12, 1991, his established onset of disability date, and that he was not disabled for purposes of entitlement to SSI from September 12, 1980, his date of application for benefits, to March 12, 1991.[6] In support of his claim that he is entitled to DIB and SSI benefits from September 12, 1980 and September 1, 1980, respectively, Plaintiff alleges that the ALJ failed to develop a full and fair record in this case, and that the ALJ failed to properly evaluate and credit evidence proffered by Plaintiff in his favor.

        Plaintiff's first challenge to ALJ's decision is that he was improperly denied DIB and SSI benefits that arose out his membership in the Dixon class.  See Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995).  The Dixon court provided that a class member whose records could not be located would be presumed to be disabled if he if he or she received a disability award for any

_____

[6] The earliest month in which an applicant may be found eligible for SSI is the month following the month in which the applicant files for SSI.  20 C.F.R. § 416.335

period of disability subsequent to the one that formed the basis for
membership in the class, and it was medically reasonable to presume that he
or she was disabled as of the date of the prior denial, or that he or she was 55
years or older at the time of the denial.  Id.   Conversely, the Dixon court
established a rebuttable presumption that a class member was not disabled if
he or she received a denial or termination of benefits subsequent to the one
that formed the basis for Dixon class membership, or if he or she was
employed for at least six months following the denial or termination of
benefits, or if a claim was reviewed and denied pursuant to a related class
action.  See Stieberger v. Sullivan, 792 F. Supp. 1376 (S.D.N.Y, 1992).

   In this case, the ALJ found Plaintiff earned $4,609.04 in 1985 and
$6,801.43 in 1989 (R. at 142, 383), both annual amounts in excess of the
$300 per month average established by the SSA as evidence of substantial
gainful activity for the calendar years 1980 through 1989. See 20 C.F.R. §
404.1574.  Plaintiff claims to rebut the presumption that he engaged in
substantial gainful activity in 1985 and 1989 because he was afforded special
conditions by his employer that would suggest he was not working at the
substantial gainful activity level.  For example, Plaintiff claims in his Work
Activity Report filed March 19, 1992, that his employer let him leave early,
take frequent breaks, and sit in a special chair when doing his work (R. at
385).   However, Plaintiff also notes in this Work Activity Report that during
the 11 to 12 week time frame covered by the report, he was sick with the flu
for six weeks (R. at 384).  The Work Activity Report of March 19, 1992, is the

first evidence presented by the Plaintiff in the record where he claims to have been given special accommodation by his employer.  During the time frame wherein Plaintiff first alleges eligibility for DIB on September 1, 1980, through Plaintiff's established onset of disability date of March 12, 1991, Plaintiff describes his work as seasonal general orchard labor, including picking apples, making boxes, and pruning trees (R. at 29, 392).  In his own statement to the ALJ, Plaintiff stated he asked the owner of the orchard to lay him off for the winter because Plaintiff did not want to work in the cold and could collect unemployment insurance (R. at 32).  Based on these statements, the Court finds Plaintiff has not rebutted the presumption that his earnings in 1985 and 1989 constitute substantial gainful activity.

Plaintiff further contends he is eligible for DIB and SSI benefits under Dixon because the records from his September 1980 DIB and SSI claims cannot be located, and it is medically reasonable to presume he was disabled as of the date of the earlier denial since he was subsequently awarded benefits effective March 12, 1991.  The medical evidence, as discussed below in response to Plaintiff's Stieberger claim, does not support a presumption that Plaintiff was disabled for purposes of DIB and SSI eligibility as early as September 1980.  Also, this Court notes Plaintiff filed a claim for SSI benefits on August 15, 1986.  This claim was denied at the initial level and no reconsideration was sought.  Under the framework of Dixon, because Plaintiff received a denial of benefits subsequent to the one that formed the basis of his membership in the Dixon class, and the denial was

not at the final level, Plaintiff is presumed to have been not disabled prior to August 15, 1986.

This Court finds the ALJ did not err in finding Plaintiff engaged in substantial gainful activity in the years 1985 and 1989 as Plaintiff did not show his work was done under special accommodations afforded him by his employer.  Thus, the ALJ properly found Plaintiff not disabled prior to March 12, 1991, his established onset of disability date.  Further, this Court notes the ALJ could have found Plaintiff not disabled under Dixon prior to August 15, 1986, as his 1986 claim for SSI benefits was denied at a level in the claims review process other than the final level.

**Denial under Stieberger Class**

11.   Plaintiff's second claim is that as a member of the Stieberger class of plaintiffs, he is disabled if the standards of review imposed by Stieberger are applied to his April 6, 1987 application for DIB and SSI benefits.  See Stieberger v. Sullivan, 792 F. Supp. 1376, as modified, 801 F. Supp. 1079 (S.D.N.Y.).  Specifically, Plaintiff alleges the ALJ did not properly examine his evidence using relevant Second Circuit precedents, including (1) consideration that a combination of impairments may be severe enough to meet or equal one of the impairments listed in Appendix 1 of the regulations, (2) the treating physician rule and (3) consideration of the credibility of Plaintiff's pain testimony.  See 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater,

221 F.3d 126, 134 (2d Cir. 2000).  Each of Plaintiff's specific complaints relative to his second claim is addressed as follows:

(1) **Combination of Impairments:** The ALJ found Plaintiff had severe impairments in step two of the five-step sequential process.  The ALJ then proceeded to step three to determine if Plaintiff had a single impairment, or a combination of impairments, of such severity Plaintiff would be unable to engage in sustained substantial gainful activity, and thus conclusively be presumed to be disabled under the regulations.  The ALJ determined Plaintiff's severe impairments, alone or in combination, did not meet or exceed the level of severity of the impairments listed in the regulations.  See 20 C.F.R. Part 404, Subpart P, Appendix 1.

As an example, Plaintiff's severe anxiety disorder did not meet or equal any of the impairments listed in Appendix 1.  Id.  Set forth in Listing Section 12.06 are the anxiety-related disorder criteria required to meet or equal a listed impairment.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.06.  Plaintiff must present evidence that satisfies either the A and B criteria, or the A and C criteria.  Id.  The A criteria requires Plaintiff to present evidence he has generalized persistent anxiety accompanied by three out four of the following symptoms: (1) motor tension; (2) autonomic hyperactivity; (3) apprehensive expectation; or (4) vigilance and scanning.  Id.  Plaintiff's treating psychiatrists noted his anxiety, but their records contain no evidence that his anxiety was accompanied by any required symptoms (R. at 265-67, 282-287).  State agency medical and psychiatric consultants also noted

Plaintiff's generalized persistent anxiety, but did not diagnose the required number of symptoms needed to satisfy the A criteria (R. at 176, 203, 224).

Plaintiff also failed to satisfy the B criteria of Listing Section 12.06 for anxiety related disorders.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.06.  The B criteria requires Plaintiff prove he satisfies two of the four following symptoms: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  Id.  Plaintiff's physicians and state agency and medical and psychiatric consultants found he had no restriction or only slight restriction of activities of daily living, no difficulties or slight to moderate difficulties in maintaining social functioning, and no evidence of repeated episodes of decompensation (R. at 167, 179, 196, 207, 227, 235, 243, 267, 287).  While Plaintiff's primary care physician noted at one visit that Plaintiff reported he was unable to concentrate (R. at 276), other treating physicians and state agency and medical and psychiatric consultants assessed his difficulties in maintaining concentration, persistence, and pace as less than marked or frequent (R. at 167, 179, 196, 207, 227, 235, 243, 267, 287).

Further, Plaintiff failed to satisfy the C criteria of Listing Section 12.06 which requires evidence of symptoms resulting in Plaintiff's complete inability to function independently outside the area of his home.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.06.  Plaintiff worked in an

apple orchard on a seasonal basis from 1982 until 1991, helped his wife with the grocery shopping, collected and sold firewood, went on a hunting trip in 1987, drove himself to medical appointments, and took driving trips 2 times per year from Plattsburg to Albany (R. at 29, 34, 235, 296, 297, 392, 405).

The ALJ also considered Plaintiff's alcoholism to determine if the condition met or equaled the criteria of any listed impairment in Appendix 1 (R. at 16).  See C.F.R. Part 404, Subpart P, Appendix 1.  While Plaintiff's treating psychiatrists noted his persistent anxiety, they found his behavior relatively normal (R. at 267, 281, 285, 287).  He had periodic bouts of drinking to excess, but also reported that he usually abstained from alcohol (R. at 265, 274, 276, 280, 285).  One of his treating psychiatrists opined that Plaintiff's psychiatric illness would "in no way would interfere with his ability to work" R. at 267). Plaintiff had no repeated episodes of decompensation (R. at 179, 206, 227).  Given the medical and psychiatric evidence presented, the ALJ correctly determined Plaintiff's alcoholism did not meet or equal the criteria of any listed impairment in Appendix 1 (R. at 16).

(2) **The Treating Physician Rule:**  Plaintiff further alleges the ALJ failed to follow the "treating physicians rule." [7]  According to the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[7] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.R.F. § 404.1527 detailing the weight to be accorded to a treating physician's opinion."  de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

14

inconsistent with the other substantial evidence in [the] record.  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  Under C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing  C.F.R. § 404.1527(d)(2); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Plaintiff claims in his Supplemental Social Security Appeal Brief that the ALJ rejected the findings, conclusions, and opinions of Dr. Likhite in favor of the conclusory opinions of non-treating consultative sources that Plaintiff was not disabled.  However, in reviewing the ALJ's reasoning in his decision, this Court finds the ALJ carefully considered Dr. Likhite's medical evidence and opinions, along with the opinions of Plaintiff's treating psychiatrists, as well as the opinions of State agency medical and psychiatric examiners.

As an example, Dr. Likhite examined Plaintiff on August 6, 1986. Her treatment notes, dated September 22, 1986, indicated he was "nervous,

unable to concentrate, unable to make decisions, depressed, afraid of dying, and unable to sleep well" (R. at 276).  She found him, "thin, tremulous, [with] pressure of speech" (R. at 277).  Dr. Likhite referred Plaintiff to a psychiatrist for further treatment (R. at 277).  Plaintiff's treating psychiatrist, Dr. Tenenbaum, treated Plaintiff on August 12, 1986, August 19, 1986, and September 2, 1986.  He noted that while Plaintiff claimed some anxiety, he seemed quite calm, well-oriented, had adequate insight and judgment, and that his psychiatric illness would not interfere with his ability to work (R. at 281).  Plaintiff's appearance, behavior, and speech were normal.  Id. Plaintiff's condition, as noted by Dr. Likhite on August 8, 1986, did not persist after he began treatment with Dr. Tenenbaum.  Plaintiff was examined by treating psychiatrist Dr. Agnew on May 8, 1987.  Dr. Agnew's assessment was essentially the same as that of Dr. Tenenbaum (R. at 287).  In July 1987, Plaintiff was hospitalized after a brief bout of drinking (R. at 270, 282).  Dr. Agnew treated Plaintiff again on September 9, 1987 and noted he was doing well, abstaining from alcohol, and had lessened anxiety as a result of prescribed medication (R. at 282).  Clearly, Plaintiff's problems did not persist with counseling and medication.  Thus, the Court concludes that the ALJ afforded appropriate weight to Dr. Likhite's opinions.

While the ALJ did not specifically rely on the findings of the State agency medical and psychiatric consultants in his opinion, he was entitled to consider the opinions of these experts who are qualified in the field of DIB and SSI.  See 20 C.F.R §§ 404.1512(b)(6) and 416.912(b)(6). On November

19, 1986, Plaintiff was evaluated by State agency psychiatric consultant, Dr. Miller (R. at 166-168). Dr. Miller noted Plaintiff had engaged in prior alcohol abuse, but had been sober for two years (R. at 168). He found Plaintiff to have an appropriate appearance, and noted he was calm, showed good insight and judgment, was able to relate to others, and had no suicidal ideation (R. at 168). Dr. Miller's examination revealed Plaintiff was not significantly limited in his ability to remember locations and work-like procedures, understand and remember short and simple instructions, carry out short and simple instructions, follow a regular attendance schedule, sustain an ordinary routine without special supervision, make simple work related decisions, and work in coordination with and in proximity to others (R. at 166). While Plaintiff had moderate limitations in concentration, he could interact appropriately with co-workers, take precautions to avoid hazards in the workplace, and respond appropriately to changes in the work setting (R. at 167). Plaintiff was examined by State agency medical consultant, Dr. Reed-Delaney, on June 25, 1987. (R. at 195-207). Dr. Reed-Delaney's assessment of Plaintiff's mental residual functional capacity was essentially the same as that of Dr. Miller (R. 195-196). Dr. Reed-Delaney further opined that available evidence did not support Plaintiff's claim of disability (R. at 198). The ALJ's determination that Plaintiff was not disabled as of the date of his April 6, 1987 application for DIB and SSI is clearly supported by the State agency medical and psychiatric consultants.

17

(3) **Consideration of Plaintiff's Pain**.  Plaintiff's third allegation is that the ALJ failed to consider Plaintiff's pain.   From the record, it is clear the ALJ carefully evaluated the medical records and Plaintiff's testimony as it pertained to his April 6, 1987 application for DIB and SSI.  However, there is little in the record that would suggest Plaintiff suffered from disabling pain prior to his established onset of disability of March 12, 1991.  Plaintiff was examined by Dr. Freedman in May 1993 for Peyronie's disease (R. at 264). He was examined by Dr. Freedman again in April 1986 for a large left hydrocele, but cancelled the surgery to have it removed.  Id.   Dr. Freedman noted neither condition was disabling.  Id.  In examinations of Plaintiff on August 6, 1986, and March 12, 1987, Dr. Likhite noted the hydrocele was causing him pain (R. at 274, 276).The hydrocele was successfully removed by Dr. Freedman on March 26, 1987, and no complications were noted (R. at 269).  Plaintiff did not complain of pain to his treating psychiatrists, Drs. Tenenbaum and Agnew (R. at 265-267, R. at 282-287).  Dr. Krakowski's discharge notes from Plaintiff's hospitalization for acute alcoholism from January 23, 1988 through February 10, 1988, confirmed a diagnosis of cirrhosis of the liver, but noted his general health had been improved with vitamins and valium (R. at 305).  No pain was noted, nor was pain medication prescribed (R. at 303-306).  Dr. Likhite's residual functional capacity evaluation suggests Plaintiff was capable of performing light work (R. at 319). Plaintiff reported no disabling pain until his Disability Report dated March 22, 1991, wherein he reported back and neck pain beginning February 11, 1991

(R. at 388).  This Court finds the ALJ properly considered the minimal evidence of Plaintiff's pain relevant to the time period for his April 6, 1987 application for benefits, and the objective medical and other evidence is not consistent with a claim of disabling pain.  See 20 C.F.R. §§ 404.1429 and 416.949, SSR 96-7p.

**Failure to Consider Residual Functional Capacity:**

12.     Plaintiff's third claim is that the ALJ erred in concluding Plaintiff had the residual functional capacity to perform work that exists in the national economy.  At step four of the sequential evaluation, the ALJ determined Plaintiff could not perform his past relevant work as an apple picker as that is a job requiring medium physical exertion.  See U.S. Department of Labor Dictionary of Occupational Titles and Selected Characteristics of Occupations, § 403.687.018.  The ALJ then proceeded to step five of the sequential evaluation and found Plaintiff retained the residual functional capacity to perform light work which was not complex (R. at 19-20).  The ALJ determined Plaintiff could perform work that involved sitting, standing, and walking for six hours per day, lifting up to ten pounds frequently, and twenty pounds occasionally (R. at 19).  Plaintiff could perform postural activities and repetitive motions, but could not perform complex tasks.  Id.  The ALJ's assessment of Plaintiff's residual functional capacity was consistent with the medical and other evidence in the record that pertained to the time period of Plaintiff's claim.  As an example, Plaintiff's primary treating physician, Dr. Likhite, completed a residual functional capacity assessment of him on

February 19, 1988 (R. at 319).  The doctor assessed Plaintiff as being able to occasionally lift 20 pounds, and carry ten pounds.  Id.  Plaintiff could occasionally bend, squat, and crawl, but could not climb.  Id.  He could use both hands for grasping, pulling, and pushing, but the doctor restricted fine hand manipulations.  Id.  The doctor did not restrict Plaintiff's ability to sit, stand, or walk.  Id.

Plaintiff's treating physician, Dr. Freedman, noted neither Plaintiff's Peyronie's disease, nor his hydrocele, were disabling conditions (R. at 264).  Further, Plaintiff's treating psychiatrists, Drs. Tenenbaum and Agnew, noted that when Plaintiff was treated with psychotherapy, his psychiatric condition "in no way would interfere with his ability to work," and that he was "doing well."  (R. at 267, 282).

While the ALJ did not specifically cite the opinions of State agency psychiatric and medical examiners when making his residual functional capacity determination, the record of Dr. Miller's assessment of Plaintiff's residual functional capacity supports the ALJ's determination that Plaintiff was capable of light work (R. at 170).

In their testimony before the ALJ, neither Plaintiff nor his wife noted Plaintiff had significant physical limitations or restrictions (R. at 22-37).  Plaintiff's medical evidence offers little to suggest significant physical limitations or restrictions.  The ALJ relied upon the Second Circuit holding that allows the Commissioner to consider, "not only what the record says but also what it does not say."  See Dumas v.Schweiker, 712 F.2d 1545, 1553 (2d Cir.

20

1983).   Because Plaintiff bears the burden of proving his residual functional capacity, the ALJ could rely on the lack of evidence presented by Plaintiff that would preclude a light range of work.  See 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3).

The ALJ also considered Plaintiff's age, education, past work experience, and residual functional capacity in conjunction with the Medical-Vocational guidelines which direct a finding of "not disabled."  See 20 C.F.R Part 404, Medical-Vocational Guidelines (the Grids), Appendix 2, Subpart P.

This Court finds the ALJ properly considered medical and other evidence, as well as testimony from Plaintiff and his wife, in determining Plaintiff had the residual functional capacity to engage in light work.

**Deprivation of a Full and Fair Hearing and Prejudice based on Self-Representation**

13.    Plaintiff's fourth claim is that he was deprived of a full and fair hearing before the ALJ, and was prejudiced by his lack of representation. Plaintiff alleges he did not knowingly and voluntarily waive his right to counsel, and because the hearing was brief, the ALJ did not fully develop the record.  The Commissioner is required to ensure a claimant is aware of his or her right to counsel, but is not required to provide the claimant with an attorney.  See Robinson v. Sec'y of Health and Human Servs., 733 F.2d 255, 257 (2d. Cir. 1984); Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980).  In this matter, the Commissioner sent Plaintiff an acknowledgement letter explaining the hearing process, along with a list of free and private attorneys to assist him (R. at 56-62).  During the hearing, the ALJ questioned Plaintiff to

ensure he received the letter and understood his right to representation.  He advised Plaintiff he was entitled to have an attorney present, and asked if Plaintiff was planning to proceed without one (R. at 24).  Plaintiff acknowledged he wished to proceed without counsel.  Id.   The evidence in the record suggests Plaintiff was able to read and understand the information sent to him by the Commissioner, as his hobbies and pastimes included reading history books and stories (R. at 235).  Plaintiff evidenced no confusion when asserting he wished to proceed without counsel (R. at 24).  Further, the record shows Plaintiff was represented by a legal services group in his earlier claims in 1987 and 1991, from which it can be inferred that he was aware of the importance and advantages of representation (R. at 301-306, 465-472).  Moreover, it may also be inferred that he knew how to obtain the services of counsel if he wished to be represented, and voluntarily choose to forego representation on the record.

Plaintiff also alleges the ALJ failed to fully develop the evidence at the hearing.  Sections 205(b) and 1631(c) of the SSA provides that the ALJ must base his or her decision on the "evidence adduced at the hearing."  See 20 C.F.R §§ 404.944 and 416.1444.  The regulations provide the ALJ shall look fully into the issues, question the claimant and the other witnesses, and accept as evidence any documents that are material to the issues.  Id. The ALJ questioned Plaintiff and his wife about the evidence contained in the record, the nature of his disability, and the effect of his impairment on his ability to function on a daily basis (R. at 25-37).  The ALJ also had the

opportunity to review Plaintiff's extensive record from both his treating and examining sources.

This Court finds Plaintiff was not prejudiced by his lack of representation at his hearing as he knowingly and voluntarily waived his right to representation after a detailed inquiry into his wishes concerning lawyer representation, which was clearly set forth in the record.  Further, this Court finds the ALJ provided a full and fair hearing in which the ALJ looked fully into the issues, questioned the claimant and the other witnesses, and accepted as evidence documents that were material to the issues.

**Rejection of Credibility Regarding Symptoms and Complaints**

14.     Plaintiff's fifth claim is that the ALJ erred in rejecting his credibility regarding his symptoms and complaints.  The ALJ considered Plaintiff's subjective symptoms and complaints and afforded the complaints some weight in finding that Plaintiff was not disabled and retained the residual functional capacity to perform light work.  The ALJ examined Plaintiff's medical records, his wife's testimony about his impairments, and information about his problems with alcohol (R. at 18-19).  Despite Plaintiff's subjective reports about his inability to work, the ALJ found Plaintiff was able to work during several years after his alleged onset of disability (R. at 19).  In two of the years, Plaintiff's earnings were high enough to establish substantial gainful activity.  Id.   Plaintiff testified he received unemployment insurance benefits, which require the recipient to certify he or she is willing and able to work. Id.   Additionally, on his disability reports, Plaintiff acknowledged he

performed many activities of daily living, including working in his garden,

shoveling snow, performing household chores, and taking care of his elderly

mother. (R. at 235, 395)

       In sum, the record in this case does not substantiate Plaintiff's

assertion that during the relevant time period for his April 6, 1987 claim, his

pain and other impairments were disabling.  Accordingly, the ALJ exercised

his discretion to evaluate the credibility of Plaintiff's testimony and render an

independent judgment regarding the extent of Plaintiff's subjective complaints

and reported symptoms based on the objective medical and other evidence.

See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 186

(2d. Cir. 1984).


## Conclusion

    15.    After carefully reviewing the administrative record, this Court finds

substantial evidence supports the ALJ, including objective medical and other

evidence, and Plaintiff's testimony regarding his symptoms and complaints.  It

is clear to this Court that the ALJ thoroughly examined the record, afforded

appropriate weight to all the medical evidence, including Plaintiff's treating

physicians, and afforded Plaintiff's subjective claims of pain and other

symptoms an appropriate weight when rendering his decision that Plaintiff

was not disabled during the relevant periods of both his September 12, 1980

application for DIB and SSI and his April 6, 1987 application for DIB and SSI.

This Court finds no reversible error and further finding that substantial

evidence supports the ALJ 's decision, this Court will, upon the pleadings and transcript of the record, affirm the decision of the ALJ under the substantial evidence rule, grant judgment to the Defendant, and order that the Plaintiff's case be dismissed.  Accordingly,

IT IS HEREBY ORDERED, that the decision of the ALJ is AFFIRMED and judgment for the Defendant is GRANTED.

FURTHER, that Plaintiff's case is DISMISSED, and

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.


SO ORDERED.

Dated:  March 21, 2007
        Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

25